AMY HARMAN BURKART (Mass Bar No. 651828)
Email: BurkartA@sec.gov
COLIN MISSETT (Mass Bar No. 706248)
Email: MissettC@sec.gov
JOY GUO (N.Y. Bar No. 5294764)
Email: GuoJ@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
Telephone: (617) 573-8900
Facsimile: (617) 573-4590

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiff,<br><br>vs.<br><br>**YIDA GAO** and **SHIMA CAPITAL MANAGEMENT LLC,**<br><br>Defendants. | Case No.  25-cv-10200<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Securities and Exchange Commission (the "Commission"), for its complaint against Yida Gao and Shima Capital Management LLC ("Shima Capital"), alleges as follows:

### SUMMARY

1.     Gao is a venture capitalist, investor, and registered investment adviser who has managed multiple venture funds. He focuses primarily on the crypto and emerging technology space, and has garnered significant accolades, raised funds from well-known investors, and obtained a high-profile teaching position. But while Gao was achieving success as a venture capitalist, he also was making material misrepresentations to, and engaged in a scheme to defraud, certain investors.

2.     Specifically, beginning in approximately May 2021 through March 2023, Gao raised

significant sums by offering and selling membership interests in a crypto-asset-focused venture fund that he called "Shima Capital Fund I," using a "pitch deck" (marketing materials) that contained material misrepresentations concerning Gao's investment track record. Gao formed an entity, Shima Capital Management LLC, to manage investments in Shima Capital Fund I, and registered it with the Commission as an investment adviser.

3.      Gao used the misleading pitch deck to raise more than $158 million from 349 investors in Shima Capital Fund I, falsely claiming, among other things, that one of his prior investments had generated a 90 times return.

4.      In February 2023, a prominent news publication published an article regarding an apparent discrepancy in the Shima Capital Fund I pitch deck. When Gao became aware that the article was about to be published, he called several of his most significant investors and falsely represented to them that the discrepancies arose from mere clerical errors.

5.      Separately, as part of a different investment that Gao pitched in the spring of 2021, he misled other investors by telling them that he would be purchasing assets for the proposed investment vehicle at a significant discount, but then failed to pass on the full benefit of the discount to the investors, instead keeping a significant portion as profit.

6.      Specifically, in April 2021, Gao offered and sold membership interests in a special purpose vehicle he formed (the "BitClout SPV") for the purported purpose of making investments in BitClout, a blockchain social network for which BitClout tokens were the native crypto asset. Gao created a marketing memorandum for the BitClout SPV that claimed that he could negotiate a 20–40% discount to purchase BitClout tokens for the BitClout SPV, due to his unique access to purchase directly from early BitClout investors. Gao assured the investors he solicited to purchase membership interests in the BitClout SPV that this substantial discount would protect their investment even if the price of the BitClout tokens later dropped significantly. Gao used the memorandum to solicit approximately $11.9 million from two individuals and three entities. But this memorandum was false and misleading: while Gao did obtain the BitClout tokens at a substantial discount, he did not sell them to the BitClout SPV at that price. Instead, beginning in May 2021, in a series of transactions, Gao purchased BitClout tokens at a discounted price and then

Complaint

sold them to the BitClout SPV for a higher price, securing $1.9 million in profit for himself that he failed to disclose.

7.    Thus, at the same time that he was holding himself out as a respected and successful investor in crypto and emerging technologies, Gao was making false and misleading statements and engaged in two different schemes to defraud his investors and prospective investors.

## VIOLATIONS

8.    By engaging in the conduct set forth in this Complaint, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8)].

9.    Unless Defendants are permanently restrained and enjoined, they will continue to engage in the acts, practices, transactions, and courses of business set forth in this Complaint and in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

10.    The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)]; Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)]; and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].

11.    The Commission seeks a final judgment: (i) permanently enjoining Defendants from engaging in the acts, practices, transactions, and courses of business alleged herein by committing or engaging in specified actions or activities relevant to such violations; (ii) ordering Defendant Gao to disgorge their ill-gotten gains and to pay prejudgment interest thereon pursuant to Section 21(d)(5) and (7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and (7)]; (iii) imposing civil money penalties on Defendant Gao pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S. Code § 80b-9(e)]; (iv) imposing an officer and director bar on Defendant Gao pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act

[15 U.S.C. § 78u(d)(2)]; (v) prohibiting Defendant Gao from participating, directly or indirectly, including, but not limited to, through any entity he controls, in any offering of securities, provided, however, that such injunction shall not prevent him from purchasing or selling securities for his personal account, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)]; and (vi) ordering such other and further relief the Court may find appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22 of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v]; Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]; and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

13.    In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails.

14.    Venue is proper in the Northern District of California pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Sections 209(d) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-14]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the District. Specifically, Gao solicited one or more investors in San Francisco during the course of both schemes.

## DEFENDANTS

15.    **Gao**, age 35, resides in Marietta, Georgia. Gao is the founder, owner, and Managing Director of registered investment adviser Shima Capital.

16.    **Shima Capital** is an investment adviser registered with the Commission since September 27, 2022, and is wholly owned and controlled by Gao. Shima Capital was formed and organized by Gao in December 2021 and incorporated in Puerto Rico. Shima Capital's principal place of business is San Juan, Puerto Rico. As of March 2025, Shima Capital had approximately $165 million in regulatory assets under management. Shima Capital advises two private funds,

4

Complaint

Shima Capital A LLC and Shima Capital QP LLC (collectively, the "Shima Funds"), and an investment vehicle for non-U.S. investors, Shima Capital Blocker LLC. The Shima Funds and Shima Capital Blocker LLC operate as parallel entities, as defined in a shared private placement memorandum, and were marketed collectively as "Shima Capital Fund I."

## RELEVANT ENTITIES

17. **Shima Capital Fund I**, marketed by Gao with a purpose of investing in companies whose businesses involved crypto-asset-related products and services, is made up of the three funds managed by Shima Captal. Gao managed the funds underlying Shima Capital Fund I, and had ultimate responsibility for making investment decisions. Gao and Shima Capital received investment management fees from Shima Capital Fund I.

18. **BitClout SPV Management LLC** was formed and organized by Gao in April 2021, under the laws of Delaware, and was owned and controlled by Gao. BitClout SPV Management LLC was formed for the purpose of serving as the management company for: (i) BitClout SPV I LLC, a Delaware limited liability company created for investment by U.S. accredited investors; and (ii) BitClout SPV II LLC, a Delaware limited liability company created for investment by U.S. qualified purchasers (collectively with BitClout SPV I, the "BitClout SPV").

## FACTS

**A. Gao and Shima Capital Made Material Misrepresentations to Investors in Shima Capital Fund I.**

19. In May 2021, Gao prepared a pitch deck for the purpose of soliciting investors to purchase membership interests in a crypto-asset-focused venture fund that eventually would be known as Shima Capital Fund I.

20. Gao, from May 2021 through March 2023, and Shima Capital, from its December 2021 formation through March 2023, used the May 2021 pitch deck and a subsequent substantially similar version of the pitch deck to solicit and raise more than $158 million from 349 investors.

21. Both Gao and Shima Capital are investment advisers subject to the Advisers Act. Investment advisers owe fiduciary duties of care and loyalty to their investment advisory clients.

22. The investors solicited by Gao purchased membership interests in one of three

Complaint

Cayman Islands parallel funds that comprise what Gao called "Shima Capital Fund I"—Shima Capital A LLC for U.S. accredited investors, Shima Capital QP LLC for U.S. qualified purchasers, and Shima Capital Blocker LLC for non-U.S. investors. Two of the funds, Shima Capital A LLC and Shima Capital QP LLC, are pooled investment vehicles.

23.     The Shima Capital Fund I pitch deck that Gao used to solicit investors in the Shima Funds through most of 2021 and 2022 contained material misrepresentations concerning Gao's track record investing in crypto assets. Most significantly, the pitch deck contained a slide that highlighted five "fund-returning" investments with returns that Gao purported to have earned prior to his formation of Shima Capital:

24.     The return multiples for the five investments listed on that slide corresponded to a chart presented on later slides in the deck that purported to show Gao's investment in a total of 28 crypto assets. For each of the 28 crypto assets, the chart listed Gao's purported entry and exit prices, and associated purported return multiples.

25.     But all of the return multiples highlighted on that slide were inaccurate: two of them were understated and three of them were significantly overstated. Specifically:

   • For Synthetix, Gao earned a 31x return, not an 85x return;

   • For Terra, Gao earned an 8.5x return, not a 65x return; and

   • For BitClout, Gao earned a 2.8x return, not a 90x return.

Complaint

26.     The false and misleading statements and omissions made by Gao, individually and on behalf of Shima Capital, were material. Gao claimed that he had experienced tremendous success in his prior investments, and pointed to that success in order to attract investors to his new venture. A reasonable investor would have found it important to know that Gao was significantly overstating his returns from prior endeavors and Gao's omission of this information made his statements concerning his investment track record misleading in light of the circumstances under which they were made. The disclosure of the omitted facts or accurate information also would have altered the "total mix" of information available to investors in Shima Capital Fund I.

27.     As of June 2024, the Shima Funds had deployed approximately $133 million, net of proceeds from investment sales, in connection with over 200 investments.

28.     On February 10, 2023, the *Financial Times* published an article that highlighted an apparent discrepancy in the Shima Capital Fund I pitch deck with respect to the reported return multiple for Gao's prior investment in BitClout, for which he claimed to have earned a 90 times return.

29.     In anticipation of the article, Gao called several top investors and falsely told them that the discrepancies that were about to be publicized in the forthcoming article were based on mere clerical errors.

30.     When one of the investors in the Shima Funds texted Gao after their call and asked about the size of the error, Gao replied falsely that he had "penciled in the wrong investment date," which had the effect of setting his BitClout entry price at "$2 instead of $59," and therefore, "the exit was shown to be 90x, which it should have been 2.3x."

31.     Gao knew that his statements to investors were false and misleading because he was aware that he had not realized the gains that he was advertising in the pitch deck and that their inclusion was not the result of an inadvertent error.

32.     Gao's statements and conduct constituted a scheme to defraud and his actions defrauded both Shima Capital Fund I and its investors.

**B. Gao Made Material Misrepresentations to Investors in the BitClout SPV.**

33.    At approximately the same time that he was forming Shima Capital Fund I and soliciting investors for it, Gao was creating a separate investment vehicle to raise money for a different crypto-focused venture, and soliciting other investors for it.

34.    Specifically, in April 2021, Gao drafted a document he labeled "Fund Memo" that he prepared for the purpose of pitching prospective investors to purchase membership interests in a special purpose vehicle that would invest in the BitClout blockchain social network. The Fund Memo described the BitClout blockchain in detail, stating that its native crypto asset, the BitClout token, was "naturally scarce" because only 10 to 19 million BitClout would ever be minted, and that the price of newly minted BitClout would double for every million BitClout sold.

35.    Gao formed the BitClout SPV for the purpose of making the BitClout-related investments described in the Fund Memo. The BitClout SPV was made up of two Delaware entities—BitClout SPV I LLC, for U.S. accredited investors, and BitClout SPV II LLC, for U.S. qualified purchasers. Investors purchased membership interests in the BitClout SPV I LLC or BitClout SPV II LLC.

36.    A key aspect of the BitClout SPV's purported investment strategy was based on Gao's assertion that he could obtain a 20–40% discount to the prevailing BitClout price due to his unique access to early BitClout investors from whom he would purchase BitClout tokens. Gao specifically assured prospective investors through the Fund Memo that "[i]f BitClout lists on an exchange and the price falls by 20–40%, investors are protected since we are acquiring the tokens at a 20–40% discount."

37.    The Fund Memo containing these statements was used to offer and sell approximately $11.9 million in membership interests in the BitClout SPV to two individuals and three entities.

38.    These statements to prospective BitClout SPV investors were false and misleading because this substantial discount was not entirely passed to the BitClout SPV.

39.    Specifically, in early May 2021, Gao, in his personal capacity, began to acquire

8

BitClout tokens by making a series of purchases from individual sellers on over-the-counter desks. Gao did not sell those BitClout tokens to the BitClout SPV at the price he paid for them, but instead charged the BitClout SPV a significant premium to the price he paid.

40. On May 5 and 6, 2021, for example, the BitClout SPV paid a Gao-controlled wallet approximately $1.5 million for 11,350 BitClout tokens that Gao had acquired days earlier for approximately $1.3 million. Gao kept the difference—approximately $200,000—for himself. In a series of transactions, Gao repeated this process, keeping similarly sized amounts.

41. In all, between May 3 and May 23, 2021, Gao purchased over 75,000 BitClout tokens for approximately $8.7 million for later sale to the BitClout SPV. And, when transferring those BitClout tokens to the BitClout SPV, Gao charged the BitClout SPV a total of approximately $10.6 million. Overall, this represented an approximately 20% discount of BitClout to the prevailing market price. Gao kept the difference between what he bought the tokens for and what he sold them to the BitClout SPV for—approximately $1.9 million—as profit for himself, without ever disclosing his profit to investors in reconciliation statements or other communications.

42. In an email to one investor, for example, Gao stated that he had "successfully OTC'd 95% of our fiat to BitClout at an average discount of 20–30% to market prices," without disclosing the $1.9 million in profit from the transactions that Gao had taken for himself in the process.

43. The false and misleading statements and omissions made by Gao to the investors in the BitClout SPV were material. Gao claimed orally and in writing that he was able to obtain BitClout for a significantly discounted price. A reasonable investor would find it important to know that, while Gao was indeed able to obtain such a discount, he was not passing on the full benefit of that discount to his investors but rather was keeping a significant portion as profit for himself. Gao's omission of this information made his statements concerning the BitClout SPV's investment strategy misleading in light of the circumstances under which they were made. The disclosure of the omitted facts or accurate information also would have altered the "total mix" of information available to investors in the BitClout SPV.

44. Over the course of the year the BitClout SPV was open, the price of BitClout dropped approximately 95%. When Gao wound down the BitClout SPV, Gao sent investors

9

Complaint

documentation that purported to show the entirety of the BitClout SPV's transactions. However, the documentation did not reveal the $1.9 million that Gao kept as profit for himself. Ultimately, the BitClout SPV returned to investors less than $450,000 of the $11.9 million raised—a loss of more than 96%.

## FIRST CLAIM FOR RELIEF

## FRAUD IN THE OFFER OR SALE OF SECURITIES

### (Violations of Section 17(a) of the Securities Act)

45.    The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 44.

46.    By reason of the conduct described above, Defendants, in the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly: (i) knowingly or recklessly employed devices, schemes, or artifices to defraud; (ii) knowingly, recklessly, or negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) knowingly, recklessly, or negligently engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

47.    By reason of the conduct described above, Defendants violated Securities Act Sections 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)

48.    The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 44.

49.    By reason of the conduct described above, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of

Complaint

interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly: (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

50.     By reason of the conduct described above, Defendants violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## THIRD CLAIM FOR RELIEF

## PROHIBITED TRANSACTIONS BY AN INVESTMENT ADVISER

### (Violation of Sections 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder)

51.     The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 44.

52.     At all relevant times, Defendants were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. §80b-2(a)(11)].

53.     By engaging in the conduct described above, Defendants, while acting as investment advisers, by use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly, acting knowingly, recklessly, or negligently: (i) employed devices, schemes, or artifices to defraud clients and prospective clients; (ii) engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients and prospective clients; and (iii) engaged in acts, practices, or courses of business which are fraudulent, deceptive, or manipulative.

54.     By reason of the conduct above, Defendants violated, and unless restrained and enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

Complaint

**I.**

Permanently restraining and enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5]; and Section 206(4) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b–6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

**II.**

Ordering Defendants to pay disgorgement plus prejudgment interest of all ill-gotten gains obtained by reason of the unlawful conduct alleged in this Complaint, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

**III.**

Ordering Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S. Code § 80b-9];

**IV.**

Ordering Defendant Gao barred from acting as an officer or director pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

**V.**

Prohibiting Defendant Gao from participating, directly or indirectly, including, but not limited to, through any entity he controls, in any offering of securities, provided, however, that such injunction shall not prevent him from purchasing or selling securities for his personal account; and

**VI.**

Granting such other and further relief as this Court may deem just and proper.

Complaint

## DIVISIONAL ASSIGNMENT

Pursuant to Local Rule 3-2(d), the Commission requests assignment to the Oakland Division, as a substantial part of the events or omissions giving rise to the claim occurred in San Francisco County and a Related Case was previously filed in the Oakland Division.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury in this matter.

DATED: November 25, 2025

Respectfully submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

By its attorneys,

_/s/Amy Harman Burkart_
Amy Harman Burkart
Colin Missett
Joy Guo
SECURITIES AND EXCHANGE COMMISSION
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
(617) 573-8900 (Main)
(617) 573-4590 (Facsimile)
burkarta@sec.gov (Burkart)

Complaint